_____
Honorable Gary Spraker
United States Bankruptcy Judge

Entered on Docket
March 13, 2025
_____

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

* * * * * *

In re:                              )    Case No.: 25-10329-gs
                                    )    Chapter 11
ARMIN DIRK VAN DAMME,                )
                                    )
                                    )    Hearing Date
           Debtor(s).               )    DATE: March 4, 2025
                                    )    TIME: 1:30 p.m.
_____    )

### MEMORANDUM DECISION ON MOTION TO (1) DISMISS CHAPTER 11 CASE WITH PREJUDICE OR, IN THE ALTERNATIVE, (2) FOR IMMEDIATE RELIEF FROM THE AUTOMATIC STAY

The debtor filed his current bankruptcy on January 21, 2025, three days prior to the scheduled foreclosure of a deed of trust against real property securing a loan for which no payment has been received since 2009. This is the debtor's fourth bankruptcy since 2009. Because the debtor dismissed his third bankruptcy on November 8, 2024, the automatic stay in this case expired on February 20, 2025, pursuant to 11 U.S.C. § 362(c)(3) after the court declined to extend the automatic stay. U.S. Bank National Association, as Trustee, successor in interest to Bank of America, N.A., as Trustee, successor by merger to LaSalle Bank National Association, as Trustee for Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2004-11 (U.S. Bank) has advised the court that it foreclosed on its deed of trust on February 24, 2025.

Shortly after the debtor filed the present bankruptcy case, however, U.S. Bank and its servicer, Wells Fargo Bank, N.A. (Wells Fargo), moved to dismiss the bankruptcy under 11

1

U.S.C. § 1112(b) (ECF No. 9) (Motion to Dismiss). They argue that the debtor filed this bankruptcy in bad faith to continue his challenges to U.S. Bank's secured debt and further delay foreclosure. The court agrees. The movants also request the court bar Van Damme from filing any other bankruptcy cases for two years. Given the court's findings of bad faith, the multiple bankruptcy filings, and the lengthy litigation history the court shall bar the debtor from filing any bankruptcy for two years from the date of this order.

## FACTS

The debtor, Armin Van Damme, and his then wife, Geraldine, borrowed $740,000 from BNC Mortgage, Inc. (BNC) pursuant to a September 21, 2004 promissory note that they both signed.[1] The loan was secured by a deed of trust, signed by both Armin and Geraldine Van Damme.[2] The deed of trust was recorded in Clark County, Nevada at Instrument No. 20041005-0001691, on October 5, 2004 (the Deed of Trust). Though BNC was the lender, Mortgage Electronic Registration Systems, Inc. (MERS) was designated the original beneficiary of the deed of trust "solely as nominee for Lender and Lender's successors and assigns."[3] TD Services Company was appointed the trustee for the deed of trust.[4]

On March 18, 2008, Van Damme signed a Loan Modification Agreement with Wells Fargo as the lender.[5] The Loan Modification Agreement was also recorded in Clark County.[6] The agreement amended the Deed of Trust and the promissory note to state the unpaid principal balance as of February 1, 2008, at $796,930.46.[7] It also fixed the interest rate under the

---

[1] Ex. 1. The movants have filed numerous exhibits in support of the Motion to Dismiss. There have been no objections to these exhibits, most of which are from the public records of Clark County, Nevada, or from the various legal proceedings discussed within this decision. To the extent necessary, the court takes judicial notice under Fed. R. Evid. 201 of the exhibits, as well as the dockets for the various cases discussed herein. Unless otherwise noted, the references to exhibits are to the exhibits attached to the Motion to Dismiss.
[2] Ex. 2.
[3] *Id.* at 4.
[4] *Id.* at 3.
[5] Ex. 10.
[6] *Id*.
[7] *Id.* at 3.

promissory note at 6.350% per annum and the monthly payments for principal and interest at $5,172.62.[8] Finally, it extended the maturity date of the note until October 1, 2034.[9]

On July 29, 2008, MERS assigned its beneficial interests under the Deed of Trust to LaSalle Bank National Association, as Trustee under the Trust Agreement for the Structured Asset Investment Loan Trust Series 2004-11 By its Attorney in fact Wells Fargo Bank, N.A., successor by merger to Wells Fargo Home Mortgage, Inc. (LaSalle).[10] LaSalle assigned its interests in the Deed of Trust to Bank of America National Association as Successor by Merger to LaSalle Bank National Association, as Trustee under the Trust Agreement for the Structured Asset Investment Loan Trust Series 2004-11 (Bank of America) as evidenced by the Assignment of Deed of Trust recorded on July 13, 2009.[11]

Van Damme filed his first bankruptcy on March 6, 2009, in the Northern District of California.[12] Attorney Robert A. Wieckowski filed Van Damme's chapter 7 bankruptcy petition. In his bankruptcy schedules, Van Damme listed his joint interest in 2775 Twin Palms Circle, Las Vegas (the Property). He also listed America's Servicing Co. as holding a first mortgage against that Property in the amount of $796,930, and Bill Hammer as holding a lis pendens against the Property.[13] Van Damme received his discharge on June 9, 2009. Eventually, Bank of America moved for relief from the stay to foreclose on its deed of trust against the Property. The bankruptcy court granted that motion on December 22, 2010, and terminated the stay to permit Bank of America to proceed with foreclosure.[14]

On November 19, 2013, National Default Servicing Corporation (NDSC) recorded its Substitution of Trustee in Clark County.[15] Bank of America executed the Substitution of Trustee to substitute NDSC as trustee under the Deed of Trust, replacing the original trustee, TD

---

[8] *Id.*
[9] *Id*.
[10] Ex. 4.
[11] Ex. 5.
[12] Ex. 12.
[13] *Id.* at 14.
[14] Ex. 13.
[15] Ex. 3.

Services.[16] NDSC subsequently recorded a Notice of Default and Election to Sell under Deed of Trust on July 20, 2015.[17] Attached to the Notice of Default is an Affidavit of Authority to Exercise the Power of Sale executed by Wells Fargo as servicer of the debt secured by the Deed of Trust.[18] The Affidavit of Authority disclosed that NDSC served as the trustee under the Deed of Trust, U.S. Bank was the current holder of the promissory note and beneficiary, and Wells Fargo was the servicer of the loan.

Roughly a month later, on August 28, 2015, Van Damme sued Bank of America, MERSCORP, Inc., Bank of America N.A. Holding Corp. (formerly known as LaSalle Bank Corporation), Wells Fargo, America's Servicing Company (a division of Wells Fargo), and U.S. Bank.[19] Originally, Van Damme filed the action in state court, but it was removed to the United States District Court for the District of Nevada (the First District Court Case). *Van Damme v. JP Morgan Chase Bank, Inc., N.A., et al.,* Case No. 2:15-cv-1951-GMN-PAL (D. Nev.). Ultimately, the Third Amended Complaint became the operative complaint, and Van Damme asserted claims for quiet title, fraud, breach of contract, and breach of the implied covenant of good faith and fair dealing.[20]

On March 26, 2018, the district court entered its order granting the defendants' motions to dismiss the case.[21] In its order, the district court examined Van Damme's allegations, including his arguments that: (1) he did not sign the Deed of Trust because he was in Europe; (2) NDSC had wrongfully filed defective notices of default; and (3) the Loan Modification suffered various defects. Reviewing the complaint before it, the district court observed: "Here, the Amended Complaint contains roughly sixty pages of convoluted, often repetitive factual

---

[16] *Id.*

[17] Ex. 18 at 14; *see also* Adv. Proc. 21-01067-mkn, Adv. ECF No. 36, Ex. P. Movants have produced additional exhibits reflecting that NDSC recorded several Notices of Defaults prior to the 2013 Substitution of Trustee. Exs. 8, 9, and 11. It is unclear why NDSC recorded these Notices of Default prior to its appointment as trustee under the deed of trust. Ultimately, however, NDSC's role in recording the Notices of Default prior to its substitution is immaterial the Motion to Dismiss.

[18] *Id.* at 5-8.

[19] Ex. 14.

[20] *Id.* at 4.

[21] *Id.*

4

background and legal conclusions. Furthermore, despite its length, the Amended Complaint contains numerous confusing logical inconsistencies and ambiguous statements. Plaintiff's Amended Complaint therefore falls short of the pleading requirements."[22] The court then examined Van Damme's claim to quiet title, concluding that "although Plaintiff does not expressly admit to being in default on the loan, the Amended Complaint read as a whole does not contain even the barest hint of a dispute over whether Plaintiff was in default. Accordingly, the Court grants dismissal of the quiet title action."[23] As to the claim for fraud, the district court observed that "beyond conclusory assertions, Plaintiff fails to provide any allegations as to how the loan modification, or any of the preceding 'misrepresentations,' intentionally induced Plaintiff's reliance. Plaintiff's bare allegations of inconsistencies in the publicly recorded loan documents are insufficient to establish a claim for fraud."[24] Similarly, the district court concluded as to the claim for breach of contract that "to the extent Plaintiff is suing under his loan modification agreement with Wells Fargo, Plaintiff fails to state a claim."[25] Moreover, the court held: "Plaintiff also fails to identify any particular part of the loan agreement that was allegedly breached and what conduct constituted that breach."[26] Finally, the court dismissed the claim for breach of the implied covenant of good faith and fair dealing for the same reasons as the contract claim, noting that "nowhere in the Amended Complaint does Plaintiff allege that he did not receive the full benefits of the loan modification agreement or that his 'justified expectations' were denied."[27]

    In addition to holding that Van Damme failed to state any viable causes of action, the district court also found that his claims were barred by the applicable statute of limitations.[28] Van Damme had signed the loan modification in 2008. He did not bring his claims until 2015 – seven

---

[22] *Id.* at 6.
[23] *Id.* at 7.
[24] *Id.* at 8.
[25] *Id.*
[26] *Id.*
[27] *Id.* at 9.
[28] *Id.* at 10-11.

years after the alleged wrongdoing. Accordingly, his claims for fraud were barred by the three-year statute of limitation under NRS § 11.190(3)(d), and the six-year statute of limitations barred his claims for breach of contract under NRS § 11.190(1)(b). The court also rejected Van Damme's arguments that he had not discovered the wrongful conduct until 2015 when NDSC filed its most recent Notice of Default.

Finally, the district court denied Van Damme leave to amend noting that he had been given three opportunities to amend his complaint. Rather, the court dismissed his claims with prejudice, explaining that further amendment was "both futile and against the interests of justice."[29]

After the district court dismissed Van Damme's lawsuit, NDSC recorded another Notice of Default,[30] and on June 5, 2019, it recorded a Notice of Trustee's Sale scheduling the foreclosure sale for July 1, 2019.[31] Three days before the foreclosure sale, Van Damme filed his second bankruptcy case. This time Van Damme filed his bankruptcy in the district of Nevada. *In re Van Damme,* Case No. 19-14142-mkn (Bankr. D. Nev.). Again, Van Damme was represented by counsel, and listed U.S. Bank in his Schedule D as a secured creditor owed $808,041 secured by the Property.[32] Wells Fargo filed its proof of claim as servicer for U.S. Bank, asserting a secured claim in the amount of $1,492,802.87.[33]

On May 26, 2021, Van Damme's bankruptcy counsel, Corey Beck, filed an adversary complaint to commence *Van Damme v Wells Fargo Bank, et al.*, Adv. Proc. No. 21-01067-mkn (Bankr. D. Nev.)[34] The complaint alleged that: (1) the loan modification was invalid; (2) Wells Fargo was not the real party in interest on the promissory note; (3) the loan was sold without proper securitization; (4) Wells Fargo lacked standing; (5) Wells Fargo committed fraud; and (6)

---

[29] *Id.* at 11.
[30] Ex 6.
[31] Ex. 18 at 15; *see also* Adv. Proc. 21-01067-mkn, Adv. ECF No. 36, Ex. V.
[32] Case No. 19-14142-mkn, ECF No. 12 at 22.
[33] Case No. 19-14142-mkn, Proof of Claim No. 2.
[34] Ex. 17.

Wells Fargo's claim is barred.[35] After litigating for more than a year, the bankruptcy court entered its Order on Wells Fargo Bank, N.A.'s Motion to Dismiss Plaintiff's Amended Complaint.[36] The bankruptcy court dutifully detailed the facts established by the operative complaint and judicial notice, including the history of the promissory note, the Deed of Trust, the Loan Modification, the substitution of NDSC as trustee under the Deed of Trust, the assignments of the Deed of Trust, and the history of the recorded Notices of Default. The bankruptcy court rejected Van Damme's arguments that Wells Fargo, as servicer on the debt secured by the Deed of Trust, was not a real party in interest.[37] Moreover, the court explained that Van Damme was precluded from challenging Wells Fargo's status under the doctrine of issue preclusion.[38] As to the fraud claims brought by Van Damme, the court held that they were also barred by claim preclusion as well as the applicable statute of limitations.[39] For these reasons, the court granted the motion to dismiss without leave to amend. The Ninth Circuit Bankruptcy Appellate Panel (BAP) affirmed the dismissal of the adversary proceeding with prejudice on April 12, 2023.[40] The Ninth Circuit affirmed the BAP's decision on July 23, 2024.[41]

On August 22, 2022, Armin and Geraldine Van Damme conveyed their joint interests in the Property to Geraldine Van Damme solely, by a Grant, Bargain, and Sale Deed.[42] That deed references a Decree of Divorce ordered on August 5, 2022. The debtor also stated in oral argument on the Motion to Dismiss that he and his wife are divorced, and the Property is now owned solely by Geraldine Van Damme.

On April 11, 2024, NDSC recorded another Notice of Default and Election to Sell Under Deed of Trust.[43] Roughly two months later, in June 2024, Van Damme filed another action to

---

[35] *Id.*
[36] Ex. 18.
[37] *Id.* at 19.
[38] *Id.* at 23.
[39] *Id.* at 24-29.
[40] *Van Damme v. Wells Fargo, Bank, N.A. (In re Van Damme),* 2023 WL 2911610 (B.A.P. 9th Cir. Apr. 12, 2023).
[41] Ex. 19.
[42] Ex. 20.
[43] Ex. 7.

quiet title in the Property in the Nevada state court. Again, the action was removed to the federal district court. *Van Damme v. U.S. Bank*, Case No. 2:24-cv-01287-JAD-BNW (the Second District Court Case). Van Damme also asserted claims for violations of due process and the Fair Debt Collections Practices Act, unjust enrichment, emotional distress and fraud.[44]

While the Second District Court Case was pending, on September 12, 2024, Van Damme filed his third bankruptcy case. Van Damme returned to the District of Northern California to file his chapter 13. Shortly after filing the third bankruptcy case, Van Damme sought to stay the district court litigation based on his bankruptcy filing.[45]

A week after the third bankruptcy was filed, the district court entered the Order Denying Motions to Remand, Declare Plaintiff a Vexatious Litigant, Disqualify Defendant's Counsel, and Stay this Case Pending Plaintiff's Bankruptcy; Granting Defendant's Motion to Dismiss; Denying all Remaining Motions as Moot; and Closing Case.[46] It rejected Van Damme's argument that his pending bankruptcy case stayed his ongoing claims against U.S. Bank, and proceeded to consider the pending matters, including U.S. Bank's motion to dismiss. The court began by noting:

> In the two months since removal, Van Damme has filed more than a dozen other motions seeking various forms of relief; he asks the court to grant summary judgment in his favor, dismiss U.S. Bank for 'lack of standing and jurisdiction,' dismiss two minute orders entered by the magistrate judge, strike some of U.S. Banks's filings, and 'stop [the] foreclosure sale' of the at-issue property, which is apparently scheduled for September 20, 2024. Last week also, Van Damme also filed four motions indicating that he had filed for Chapter 13 bankruptcy and demanding that his case be stayed and the bank be prevented from selling the property in foreclosure.[47]

Again, the district court detailed the history of the note and Deed of Trust, the recorded Notices of Default, and the bankruptcy cases. The district court also examined the prior decisions in the First District Court Case and the Adversary Proceeding dismissing Van Damme's claims

---

[44] Ex. 21 at 9.
[45] *Id.* at 3.
[46] Ex. 21.
[47] *Id.* at 2-3.

with prejudice and the decisions on appeal affirming those decisions. It held that claim or issue preclusion barred the quiet title claim, any relitigation of claims, and any challenge based on alleged fraudulent defects in the assignments. The court further ruled that Van Damme's due process claim was an improper collateral attack on the dismissal and other orders entered in the First District Court Case. As to the claim for unjust enrichment, that claim was also time barred. Similarly, the court dismissed the claims for emotional distress, punitive damages, violation of the FDCPA, and any other remaining quiet title claims. Finally, it rejected all of Van Damme's arguments relating to standing and fraudulent assignments. Ultimately, the district court dismissed Van Damme's claims with prejudice but denied U.S. Bank's request to declare him a vexatious litigant explaining that "I cannot conclude that his litigation history has reached the point of vexatious - though it's close."[48] Van Damme has appealed various orders entered in the Second District Court Case to the Ninth Circuit.[49] His appeals of those orders remain pending.

Another week after entry of the Order in the Second District Court Case, on September 26, 2024, U.S. Bank and Wells Fargo moved to transfer the venue of Van Damme's pending chapter 13 bankruptcy from the Northern District of California to Nevada (Motion to Transfer Venue).[50] The movants argued that Van Damme had fraudulently listed a mailbox at a UPS store in Danville, California as his residence to support the filing in California. The Motion to Transfer Venue was scheduled for hearing on November 6, 2024.

On November 1, 2024, Van Damme filed an adversary proceeding against U.S. Bank in his chapter 13 proceeding. *Van Damme v. U.S. Bank National Assoc., et al.,* Adv. Proc. No. 24-04049. His complaint included claims for: (1) declaratory relief and determination of standing; (2) judicial notice of adjudicative facts and void judgment under Rule 60(b)(4); (3) fraud and misrepresentation; and (4) objection to claims and demand for documentation of standing.[51] However, on the day of the hearing on the Motion to Transfer Venue, Van Damme moved to

---

[48] *Id.* at 29.
[49] Ex. 28.
[50] Ex. 23.
[51] Ex. 25.

dismiss his chapter 13 bankruptcy.[52] The bankruptcy court dismissed the bankruptcy pursuant to the debtor's motion, but specifically ordered that if Van Damme filed another bankruptcy case in the district, it was to be assigned to that judge and "the hearings on the motions to dismiss the case, to change venue, and for relief from the automatic stay maybe heard on seven days [sic] notice without the need for a specific order shortening time."[53]

On December 5, 2024, the bankruptcy court heard oral argument on U.S. Bank's motion to dismiss the pending adversary proceeding. Shortly thereafter, the court entered its Order Granting Motion to Dismiss Complaint and Close Adversary Proceeding.[54] Van Damme has appealed the dismissal of the adversary proceeding to the BAP, where it remains pending.[55]

On December 16, 2024, Van Damme filed yet another lawsuit in the Nevada state courts. The complaint, filed against NDSC, again raised claims for quiet title and challenged any ability to proceed with foreclosure based on the same arguments previously rejected by the district and bankruptcy courts.[56] Three days later, on December 19, 2024, NDSC removed the complaint to federal court prior to receiving service.[57] The next day, U.S. Bank and Wells Fargo moved to intervene.[58]

Despite the latest lawsuit, on December 23, 2024, NDSC recorded its Notice of Trustee Sale and scheduled a foreclosure sale for January 25, 2025.[59] The Notice of Sale stated the unpaid principal and interest secured by the Deed of Trust totaled $1,831,711.24.[60] In response, Van Damme filed a Petition for Foreclosure Mediation on December 30, 2024.[61]

---

[52] Ex. 24.
[53] *Id.* at 3.
[54] Ex. 26.
[55] Ex. 27.
[56] Ex. 29.
[57] Ex. 31.
[58] Ex. 30.
[59] Ex. 32.
[60] *Id.* at 2.
[61] Ex. 33.

On January 21, 2025, Van Damme filed his fourth bankruptcy, this time in the District of Nevada under chapter 11.[62] The following day movants U.S. Bank and Wells Fargo filed their Motion to Dismiss.[63] The movants sought to have the Motion to Dismiss heard prior to the January 25, 2025 foreclosure sale. The court granted the motion to shorten time to consider the Motion to Dismiss but originally scheduled the hearing for February 12, 2025.[64] Van Damme has since filed numerous motions directed at stopping any foreclosure sale, including motions to continue the hearing on the Motion to Dismiss.[65] The court continued the hearing on the Motion to Dismiss to March 4, 2025, based on Van Damme's representations of a medical emergency.[66] Van Damme filed an opposition to the Motion to Dismiss the day before the hearing.[67] The court denied a second motion to further continue the hearing on the Motion to Dismiss[68] and held the hearing on March 4, 2025. Counsel for the movants appeared by Zoom video conference, as did Van Damme. At the conclusion of the hearing, the court took the Motion to Dismiss under submission.

Two days after the hearing, Van Damme filed his Emergency Motion for Clarification of the March 4, 2025 Hearing; Notice of Lack of Subject Matter Jurisdiction Due to Separation of Deed and Note; and Request for Credit Bid Information.[69] The following day, Van Damme filed the Debtor's Emergency Motion to Halt All Proceedings and Halt the Trustee Sale Due to Separation of Deed and Note, and Due Process Violations.[70] On March 11, 2025, Van Damme filed his Emergency Motion for Clarification of the March 4, 2025 Hearing, Immediate Halt of All Proceedings Due to Lack of Subject Matter Jurisdiction, and Judicial Notice of Summary Judgment Filed in Federal Court.[71]

---

[62] ECF No. 1.
[63] ECF No. 9.
[64] ECF No. 26.
[65] ECF Nos. 7, 14, 20, 25, 34, 39, 41, 50, 52, 61-62, 66, 69, 76, 80-81, 83, 86, 98, 108 and 111.
[66] ECF No. 44.
[67] ECF No. 105.
[68] ECF No. 84.
[69] ECF No. 108.
[70] ECF No. 111.
[71] ECF No. 112.

## ANALYSIS

### I.    Van Damme filed the current bankruptcy in bad faith.

U.S. Bank and Wells Fargo move to dismiss the current chapter 11 bankruptcy as a bad faith filing. Section 1112(b) governs dismissals of chapter 11 cases in bankruptcy and provides that the bankruptcy court may dismiss a bankruptcy for cause. Section 1112(b)(4) contains a nonexclusive list of factors that constitute cause for dismissal or conversion. The factors set forth in § 1112(b)(4) "are not exhaustive, and 'the court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases.'" *Pioneer Liquidating Corp. v. United States Trustee (In re Consol. Pioneer Mortg. Entities)*, 248 B.R. 368, 375 (B.A.P. 9th Cir. 2000), *aff'd*, 264 F.3d 803 (9th Cir. 2001). Courts have long recognized that a lack of good faith in filing a chapter 11 bankruptcy petition establishes "cause" for dismissal under 11 U.S.C. § 1112(b). *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir. 1994). "On a motion to dismiss under [11 U.S.C.] § 1112(b), the debtor bears the burden to prove the chapter 11 petition was filed in good faith." *Greenberg v. U.S. Trustee (In re Greenberg)*, 2017 WL 3816042, at *4 (citing *Marshall v. Marshall (In re Marshall),* 721 F.3d 1032, 1048 (9th Cir. 2013)).

The lack of good faith, or the existence of bad faith, "depends on an amalgam of factors and not upon a specific fact." *Idaho Dept. of Lands v. Arnold (In re Arnold)*, 806 F.2d 937, 939 (9th Cir. 1986). To determine whether such bad faith exists, the Ninth Circuit has instructed courts to consider:

(1) whether the debtor misrepresented facts in his or her petition or plan, unfairly manipulated the Bankruptcy Code, or otherwise filed his or her chapter 13 petition or plan in an inequitable manner;

(2) the debtor's history of filings and dismissals;

(3) whether the debtor only intended to defeat state court litigation; and

(4) whether egregious behavior is present.

*Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1224 (9th Cir. 1999). These factors are designed to ensure that the courts examining whether a bankruptcy was filed in bad faith consider the totality of the circumstances, though it is not necessary to consider each factor or weigh them equally. *In re Greenberg*, 2017 WL 3816042 at *5. A bankruptcy court may find one factor dispositive or may find bad faith even if none of the factors are present. *Id.* (citing *Mahmood v. Khatib (In re Mahmood),* 2017 WL 1032569, at *4 (9th Cir. BAP Mar. 17, 2017)). Simply stated, "[a] bankruptcy case is filed in bad faith if it was brought for 'tactical reasons unrelated to reorganization.'" *Marsch*, 36 F.3d at 828. "[N]either malice nor fraudulent intent by the debtor is required for a finding of bad faith in Chapter 11…." *In re Mitchell*, 357 B.R. 142, 154 (Bankr. C.D. Cal. 2006). Ultimately,

> the good faith inquiry focuses on the manifest purpose of the petition filing and whether the debtor is seeking to achieve thereby "objectives outside the legitimate scope of the bankruptcy laws." Put another way, the good faith standard requires the bankruptcy court to ascertain "whether [the] debtor is attempting to unreasonably deter and harass creditors or attempting to effect a speedy, efficient reorganization on a feasible basis."

*In re Greenberg*, 2017 WL 3816042 at *4 (citing *Marsch,* 36 F.3d at 828) [internal citations omitted].

Instances of filing a case in bad faith may include the use of bankruptcy "to stay a state court judgment against the debtor pending appeal. In those cases, courts have expressed concern that the petition is merely a 'litigating tactic' designed to 'act as a substitute for a supersedeas bond' required under state law to stay a judgment." *Marsch*, 36 F.3d at 828. Similarly, courts have also concluded that bad faith exists where the bankruptcy petition arose out of "'an apparent two-party dispute that can be resolved outside of the Bankruptcy Court's jurisdiction.'" *Sullivan v. Harnisch (In re Sullivan)*, 522 B.R. 604, 616 (B.A.P. 9th Cir. 2014) (quoting *Oasis at Wild Horse Ranch, LLC v. Sholes (In re Oasis at Wild Horse Ranch, LLC)*, 2011 WL 4502102, at *10 (B.A.P. 9th Cir. Aug. 26, 2011)); *see also In re Silberkraus*, 253 B.R. 890, 906 (Bankr. C.D. Cal. 2000), *subsequently aff'd*, 336 F.3d 864 (9th Cir. 2003) ("[T]wo party disputes in state court (or federal district court) should be resolved through the normal litigation process in those

forums, and…it is bad faith to file bankruptcy instead of continuing with the normal litigation process in the nonbankruptcy forums."). "Typical bad faith two-party dispute cases may involve delays on the eve of trial (litigation tactics), forum shopping, new-debtor syndrome (special purpose entities), repeat filers, and repeatedly delayed foreclosure sales." *In re Sullivan*, 522 B.R. at 616.

In this instance, each of the *Leavitt* factors compels a finding that the bankruptcy was filed in bad faith. Van Damme has misrepresented facts, unfairly manipulated the bankruptcy process, and filed the bankruptcy in an inequitable manner. He has repeatedly continued to litigate the same basic facts and arguments resulting in four separate adverse judgments. While Van Damme is proceeding without counsel now, he has previously had the benefit of counsel. And the bankruptcy court, then the district court, have both explained the preclusive effect of the prior adverse judgments on his continued efforts to argue the same facts and retry the same claims brought in the First District Court Case. Having litigated and lost, not only is he precluded from relitigating the claims he argued, but claim preclusion also prevents him from rearguing any claim that he could have brought against NDSC, U.S. Bank, or Wells Fargo at that time. Undeterred, Van Damme continues to relitigate the same facts and claims despite several different judges telling him directly and unequivocally that such claims are precluded and time barred. After dismissal of the last adversary proceeding in the Northern District of California, shortly before filing the current bankruptcy Van Damme filed yet another lawsuit in state court covering the same ground. Moreover, he now raises the same arguments in opposition to the Motion to Dismiss. His continued desire and willingness to raise claims that have been finally decided against him compellingly demonstrates that he has filed the current bankruptcy to continue those efforts rather than reorganize under the Bankruptcy Code. His continued failure to file his schedules and statements – the most basic, initial obligation in bankruptcy – is yet further

evidence that Van Damme is merely using this bankruptcy for his tactical advantage rather than to reorganize.[72]

As to the debtor's history of filings and dismissals, other courts have repeatedly detailed that history at length in their decisions. This court has done so as well to update the most recent litigation activity.

Regarding Van Damme's bankruptcy filings specifically, his 2009 bankruptcy filing resulted in the discharge of his personal liability. Bank of America did obtain relief from stay to proceed with its foreclosure, but no other litigation occurred within that bankruptcy. In stark comparison, Van Damme has used each of the subsequent two bankruptcy cases as a vehicle to continue his challenges to the secured debt. And those bankruptcy filings were sandwiched between Van Damme's litigation in the district court. While the 2019 bankruptcy in Nevada proceeded for a period of time, no plan was ever confirmed, and the case was dismissed.[73] The 2024 bankruptcy in the Northern District of California was filed under a tenuous and allegedly fraudulent basis. Van Damme conveniently avoided scrutiny of his actions by voluntarily dismissing that chapter 13. Van Damme's recent history of filings and dismissals weigh strongly in favor of a bad faith finding.

It is also abundantly clear that Van Damme filed his current bankruptcy only to defeat the pending foreclosure and continue to litigate his previously rejected claims against U.S. Bank and Wells Fargo. The movants state that Van Damme has failed to make any payment on the secured debt for nearly 17 years. Van Damme's late-filed opposition does not deny his failure to make payments. Nor did he deny it in oral argument. Rather, he argues that his prior discharge bars any foreclosure and the court lacks subject matter jurisdiction. Both arguments are frivolous as

---

[72] On February 27, 2025, the United States Trustee filed her motion to dismiss Van Damme's bankruptcy case under 11 U.S.C. §§ 1112(b) and (e), detailing additional case commencement deficiencies including Van Damme's failure to: (1) attend both his § 341(a) meeting of creditors and his initial debtor interview; (2) file monthly operating reports; and (3) provide information requested by the United States Trustee. ECF No. 94.
[73] Case No. 19-14142-mkn, ECF Nos. 144 and 156.

contrary to controlling law.[74] In fact, Judge Nakagawa previously advised Mr. Van Damme in the dismissal of his 2019 bankruptcy case that "[n]either the foreclosure sale nor the enforcement of the deed of trust, however, are barred by the discharge injunction resulting from the Debtor's prior Chapter 7."[75] Additionally, he raises the same arguments previously rejected by the District and bankruptcy courts in an effort to defeat U.S. Bank's secured claim.[76] Each challenge to U.S. Bank's secured claim has been rejected by multiple courts and Van Damme's claims dismissed with prejudice. His pursuit of those claims in the bankruptcy context is an abuse of the bankruptcy courts.

Van Damme's continued litigation with U.S. Bank is also readily characterized as "an apparent two-party dispute that can be resolved outside of the Bankruptcy Court's jurisdiction." The hallmarks of a bad faith two-party dispute are nearly all present: delays on the eve of trial/litigation tactics; forum shopping (Nevada and Northern California); repeat filings in state, district and bankruptcy courts asserting the same claims; and repeatedly delayed foreclosure sales.

Notwithstanding his burden of proof, Van Damme has failed to even discuss the ultimate question presented by the Motion to Dismiss: whether he filed the current chapter 11 in good faith. He has never discussed how he intends to proceed in chapter 11, or what valid bankruptcy

---

[74] A bankruptcy discharge releases the debtor's personal liability for dischargeable debts. It does not release any collateral securing that debt and a secured creditor may liquidate its collateral in payment of that debt notwithstanding any bankruptcy discharge. *Johnson v. Home State Bank*, 501 U.S. 78, 82–83 (1991). Additionally, Van Damme confuses the court's bankruptcy jurisdiction with the foreclosure proceedings under Nevada law. Having voluntarily filed his bankruptcy, Van Damme submitted himself to the jurisdiction of the bankruptcy court to administer his bankruptcy case. This necessarily included the continuation or termination of the automatic stay under § 362(c)(3), and the dismissal of the chapter 11 under § 1112(b), as such matters involving the administration of the bankruptcy are core matter under 28 U.S.C. §§ 157(b)(2)(A) and (G), which necessarily arise in, or under, for purposes of jurisdiction over the bankruptcy under 28 U.S.C. § 157(b)(1). The bankruptcy case may affect the right to foreclose by virtue of the stay or confirmation of a plan. Here, the court declined to extend the automatic stay beyond 30 days from the filing under § 362(c)(3), and Van Damme has not filed any plan. Van Damme has failed to show how the bankruptcy as it has proceeded precluded the foreclosure, which would be conducted under Nevada law once no longer stayed by the current bankruptcy.
[75] Case No. 19-14142-mkn, ECF No. 156 at 6.
[76] ECF No. 9 at 2.

purpose his case may serve. By his own admission, Van Damme is no longer personally liable for the secured debt owed to U.S. Bank by virtue of his discharge in the 2009 bankruptcy, nor does he hold any interest in the Property. Yet, he continues to litigate against U.S. Bank and frustrate its efforts to foreclose on its Deed of Trust. He filed his current bankruptcy shortly after dismissing his bankruptcy in the Northern District of California and days before another scheduled foreclosure sale. Not once in his many filings, including the opposition to the Motion to Dismiss, has Van Damme ever suggested any intention to propose any plan to pay U.S. Bank. Moreover, Van Damme has failed to file his schedules, statement of financial affairs, and other case commencement documents, which would address whether he has the ability to reorganize. The evidence is clear that Van Damme filed the current bankruptcy merely as the latest extension of his continuous, repeated and unsuccessful prepetition litigation. More specifically, Van Damme filed the current bankruptcy merely to defeat the pending foreclosure rather than to reorganize.

Finally, for all the reasons discussed previously the court concludes that Van Damme's actions, including his continued efforts to re-litigate in this bankruptcy those matters adversely decided against him in multiple courts, constitutes egregious behavior evidencing a bad faith filing. In this regard, the current bankruptcy is no different than those cases where the debtor files bankruptcy pending appeals of a judgment in lieu of posting a supersedeas bond. There is no evidence that Van Damme has other creditors or any need to reorganize. As noted above, he is no longer personally liable for the secured debt and has no ownership interest in the Property – it is now owned by his ex-wife. Taken at face value, his continued efforts to litigate a debt for which he is no longer personally liable, and concerning property he no longer owns, serves no valid bankruptcy purpose – especially given the final decisions entered against him by this and other courts.

The record before the court establishes each of the *Leavitt* factors weighs heavily towards a finding of bad faith, and Van Damme has failed to identify any valid bankruptcy purpose to be served. Therefore, the court finds that Van Damme has filed the current bankruptcy in bad faith

17

and shall grant the Motion to Dismiss. The court shall enter a separate order dismissing the case.[77]

## II.    The court will bar Van Damme from filing another bankruptcy for two years.

The movants also request that the court bar Van Damme from filing any further bankruptcy cases for two years. They bring their request under § 349(a), which provides:

> Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

Again, *Leavitt* controls the disposition of this question. There, the creditor sought to bar the debtor from filing any further bankruptcy filings for two years upon the dismissal of the bankruptcy case. Having concluded that the debtor had filed the bankruptcy in bad faith, the court granted the request, explaining, "Section 349(a) is not ambiguous, and plainly provides that the bankruptcy court may, at its discretion and for cause, bar the discharge of existing debt. Inherent in this authority is the power to bar subsequent bankruptcy petitions that seek to discharge such debt." *In re Leavitt,* 209 B.R. at 942-43. The *Leavitt* court also observed that "cases which have looked to the legislative history of § 349 note that it was intended to provide courts with authority to control abusive filings 'beyond the limits of § 109(g),' even in cases where the bankruptcy court enjoined the filing by a debtor of any case under Title 11 for a period greater than 180 days." *Id.* Particularly relevant to Van Damme, the court concluded: "It was proper for the bankruptcy court to prevent further litigation of the same issues by barring indefinitely future abusive filings by Debtor related to the existing, dischargeable debt." *Id.*

---

[77] Under § 1112(b), once cause is established the court must determine whether conversion or dismissal "is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate." 11 U.S.C. § 1112(b); *see also In re Sullivan,* 522 B.R at 612. In large part because of Van Damme's failure to file his schedules and statements, the court is unable to determine whether there is any reason, much less any benefit, to be gained from converting this case to chapter 7. In light of the history concerning the prior bankruptcy cases, the court finds there is no benefit to the appointment of either a chapter 11 trustee or examiner, or to the conversion of the case to chapter 7.

The reference to § 109(g) of the Bankruptcy Code is significant as that section specifically provides express authority to bar a debtor from refiling a bankruptcy for a period of 180 days if his case was dismissed for a willful failure to abide by court orders or to appear before the court, or if the debtor voluntarily dismissed a bankruptcy following the filing of a request for relief from the automatic stay. *Leavitt* establishes that courts are not limited to the 180-day refiling bar under § 109(g). Rather, courts in the Ninth Circuit "may 'dismiss a bankruptcy case with a bar preventing a debtor from re-filing in cases of abuse.... [T]he issue of the length of the bar is a matter for the Court's discretion.'" *Kulick v. Leisure Village Ass'n (In re Kulick)*, 2022 WL 17848939, at *3 (B.A.P. 9th Cir. Dec. 16, 2022) (quoting *In re Craighead*, 377 B.R. 648, 657 (Bankr. N.D. Cal. 2007)). To bar a debtor from refiling under § 349(a) upon dismissal, sufficient cause must exist. "The bankruptcy court's finding of bad faith as grounds for dismissal under § 707(b)(3)(A) alone is sufficient 'cause' under § 349(a) to impose a bar to refiling." *Johnson v. Vetter (In re Johnson)*, 2014 WL 2808977, at *7 (B.A.P. 9th Cir. June 6, 2014) (citing *Mitchell*, 357 B.R. at 157); *In re Leavitt,* 209 B.R. at 943.

The court has found that Van Damme filed the current bankruptcy in bad faith. Considering the movant's request to bar any further bankruptcy filings for two years, the court notes that Van Damme has been discharged from personal liability on the secured debt for more than a decade. And he has not held an interest in the Property since August 22, 2022. Still, he has filed two civil lawsuits and two bankruptcy cases since August 2022. Van Damme's opposition, filed after the foreclosure sale, further demonstrates that he intends to continue to challenge U.S. Bank's secured debt and the foreclosure. Nothing in the record suggests that Van Damme will be dissuaded from continuing this litigation even after the foreclosure sale. The movants have submitted compelling evidence of bad faith in the filing of this case, which includes Van Damme's repeated litigation of decided matters. This has included his use of bankruptcy to further that litigation strategy rather than pursue any valid bankruptcy goal. Accordingly, under § 349, as interpreted by *Leavitt,* the bankruptcy court shall exercise its discretion to bar any further bankruptcy filings submitted by Van Damme for two years after entry of the order of

dismissal to prevent further bankruptcy litigation of the same issues involving U.S. Bank's

secured claim.

      The court shall enter a separate order consistent with this decision.

      * * * * *

Copy sent to all parties and/or their counsel via CM/ECF Electronic Notice.

Copy sent via BNC to:

ARMIN DIRK VAN DAMME
2775 TWIN PALMS CIRCLE
LAS VEGAS, NV 89117

      # # #